UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIE FRENCH,

    Plaintiff,

v.                                    CASE NO. 07-CV-12619

COMMISSIONER OF                       DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                      MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]**


**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross motions for summary judgment. (Dkt. 8, 13.)

Plaintiff was 41 years of age at the time of the most recent administrative hearing. (Tr. at 21.) Plaintiff's relevant employment history included work as a waitress from December 2001to August 2002, work as a store manager for three years, and work in a glass factory for four years. (Tr. at 78.)

Plaintiff filed the instant claims on March 12, 2003, alleging that she became unable to work on February 14, 2002. (Tr. at 53.) The claim was denied initially and upon reconsideration. (Tr. at 23.) In denying Plaintiff's claims, the Defendant Commissioner considered fractures of upper limb and affective disorders as possible bases of disability. (*Id.*)

On April 18, 2006, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") David R. Mazzi, who considered the case *de novo*. In a decision dated January 5, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 16-22.) Plaintiff requested a review of this decision on January 15, 2007. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner when, on May 17, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On June 20, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

3

disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones,* 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord, Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*) Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)(DIB); *see also* 20 C.F.R. § 416.905(a)(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. " If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, *cited with approval in Cruse,* 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that during the time Plaintiff was eligible for benefits (since August 31, 2000), she was treated by Dr. Kent R. Biddinger, M.D., for planter fasciitis and calcaneal bursitis. (Tr. at 106.) Plaintiff was treated by Dr. John P. Blocksom, D.O., and Dr. Jamal Akbar, M.D., for right wrist pain after she fell in her living room on in February of 2002. (Tr. at 112, 121-23.) Dr. Blocksom operated on Plaintiff's wrist to repair a fracture including the pinning of the distal right radius bone, on March 1, 2002. (Tr. at 107.) Plaintiff was seen by Dr. Jose Mari Jarado, M.D., for pain in the right arm, especially in the last three fingers, and numbness. (Tr. at 125.) Plaintiff was also seen by Dr. Theron Grover, M.D., at Covenant Healthcare for the same pain symptomology. (Tr. at 125-42.) Images were taken of Plaintiff's wrist on August 27, 2002, which revealed a healing fracture. (Tr. at 143.) Plaintiff also sought treatment for pain with Dr. Allport from August through November of 2002. (Tr. at 144-45.) A consultative examination was performed at the request of the Disability Determination Service by Dr. R. Scott Lazzara, M.D.,on August 16, 2003. (Tr. at 147-51.) A residual functional capacity assessment was performed by a DDS physician on September 15, 2003. (Tr. at 153-60.) Dr. George Pestrue, Ph.D., performed a psychological evaluation on Plaintiff also at the request of the Disability Determination Service on November 13, 2003 (Tr. at 187-203), and a mental residual functional capacity assessment was completed by a DDS physician on December 8, 2003. (Tr. at 204-21.) Plaintiff was seen by Dr. Weber in early March 2003. (Tr. at 170.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since February 14,

2002, and that the period of her insured status terminated March 31, 2004. (Tr. at 18.) At step two, the ALJ found that Plaintiff's right wrist impairment, status post-surgery, with reflex sympathetic dystrophy, left eye blindness and depression with anxiety were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work as a waitress, store manager or glass packer. (Tr. at 20-21.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 21-22.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. at 21-22), and he thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national economy. (*Id.*)

F. **Analysis and Conclusions**

1. **Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

8

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

As to Plaintiff's claims of disabling physical impairment, after review the relevant evidence of record, I suggest that substantial evidence supports the ALJ findings. As mentioned, subsequent to her wrist surgery, a series of x-rays showed that the fracture was healing. (Tr. at 119-23, 143.) Electromyographic testing two months after the surgery was normal, with no radiculopathy shown in the arms shoulders or neck. (Tr. at 124-26.) Subsequent complaints of pain were treated at Covenant Healthcare, and in early July 2002, Plaintiff reported "good results with stellate ganglia blocks, however, the time period is limited." (Tr. at 128.) Subsequent to an arthroscopic examination of Plaintiff's wrist conducted by Dr. Allport (Tr. at 166), and although Plaintiff continued to evidence pain, by November 2002, Dr. Allport stated that Plaintiff's previous fracture "now appears completely stable[.]" (Tr. at 144.) In early March 2003, Plaintiff saw Dr. Weber for "a third opinion[.]" (Tr. at 170.) After summarizing Plaintiff's medical history and the results of his examination, the doctor stated, "[t]hese are all signs of someone who has a difficult time handling the pain of this problem even though she does not have a normal wrist. However it is a

functional wrist, and she has functional ROM [range of motion] and if she works hard on therapy I think she will do fine." (*Id.*)

Counsel for Plaintiff strenuously argues that the ALJ improperly overlooked the findings and opinions of Dr. Ataya. (Tr. at 284-85.) In this circuit, in order to qualify for social security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act and if the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *See Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979); *Moon v. Sullivan*, 923 F.2d 1175 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Thus, in this case, I suggest that the ALJ properly discounted the findings of Dr. Ataya, since as correctly pointed out by the Commissioner, they came after the termination of Plaintiff's insured status. Moreover, Dr. Ataya's opinions are inconsistent with the findings of the doctors who examined and treated Plaintiff during her eligibility for benefits.

As to Plaintiff's claims of disabling mental impairments, I suggest that the evidence in this case falls short of that deemed sufficient in this circuit to justify a finding of disability. In *Cornette v. Comm'r of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988), the ALJ found that the plaintiff's condition met both the A and B criteria of Listed Impairment 12.04. At issue was the date of disability. In that case, there was testimony that the plaintiff's wife had to assist him in bathing and putting on his clothes. The plaintiff twice tried to commit suicide, and plaintiff did nothing but lie in bed and watch television. *Id*. at 264. In *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991), the court reversed a finding of nondisability and held that plaintiff there met both the A and B criteria of Listed Mental Impairment 12.08. In *Lankford*, there was abundant evidence

of repeated suicide attempts, violent behavior and repeated lengthy hospitalizations for treatment of mental disorders.

The facts of these cases, I suggest, stand in contrast to those of the instant case. Plaintiff told Dr. Pestrue that she enjoyed gardening and that she "did [her] normal flower garden this summer[.]" (Tr. at 199.) She also told the doctor that she "read a lot." (*Id.*) She watched movies on a regular basis and undertook a number of household chores including cooking, loading the dishwasher, running the vacuum cleaner and doing laundry. (*Id.*) Her family assisted her with chores and she regularly went shopping with her husband. (*Id.*) I suggest that her ability to perform these tasks militates in favor of the ALJ's decision. *See also Pasco v. Comm'r of Social Security*, 137 Fed. App'x 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance . . . [and] engage in reading and playing cards on a regular basis").

In spite of the fact that Dr. Pestrue assessed the presence of "serious" symptoms (Tr. at 202), I suggest that the relevant evidence of record does not indicate that mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker v. Comm'r of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992).

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence, and in particular, the findings of Drs. Allport and Weber, as well as the daily activities described by Plaintiff

herself. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                 s/ *Charles E. Binder*
                                 CHARLES E. BINDER
Dated: April 25, 2008                 United States Magistrate Judge

## **CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Parker, Mikel Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge O'Meara in the traditional manner.


Date: April 25, 2008         By    <u>s/Patricia T. Morris</u>
                                         Law Clerk to Magistrate Judge Binder